IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

JULIE ANN HAPPEL,

        Plaintiff,

          vs.

ELI LILLY AND COMPANY,

        Defendant.

Civil Action No. 04-CV-12218 (WGY)

---

## DEFENDANT ELI LILLY AND COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

        Defendant Eli Lilly and Company ("Lilly") moves for Summary Judgment on all claims asserted against it by Plaintiff Julie Ann Happel ("Mrs. Happel") because this action is barred by the statute of limitations of Massachusetts and the District of Columbia.  In further support of its motion, Lilly adopts and incorporates herein its accompanying Memorandum of Points and Authorities (including its Statement of Undisputed Facts) and the Affidavit of Lauren E. Dwyer ("Dwyer Aff.").

        WHEREFORE, Lilly moves for the entry of summary judgment in its favor on all counts.

## REQUEST FOR HEARING

Lilly requests a hearing on its Motion for Summary Judgment.

Respectfully submitted,

ELI LILLY AND COMPANY

/s/ James J. Dillon
James J. Dillon, BBO # 124660
Foley Hoag LLP
155 Seaport Boulevard
Seaport World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

Attorney for Defendant
Eli Lilly and Company

Dated: April 29, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

JULIE ANN HAPPEL,

        Plaintiff,

           vs.

ELI LILLY AND COMPANY,

        Defendant.

Civil Action No. 04-CV-12218 (WGY)

---

**DEFENDANT ELI LILLY AND COMPANY'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

        Plaintiff Julie Happel alleges she was harmed *in utero* by a drug, DES, taken by her mother in 1965 and 1966.  Plaintiff's claims are barred by the statute of limitations because (1) Plaintiff acknowledges receiving a letter in January 2000 linking her claimed injuries to DES and (2) Plaintiff's doctors testified that they most likely told Plaintiff on several occasions between 1997 and 2000 that her pregnancy failures were due to DES -- all more than three years before this case was filed.

        Defendant Eli Lilly and Company ("Lilly") is thus entitled to summary judgment on all claims made by Plaintiff Julie Ann Happel.

**STATEMENT OF UNDISPUTED FACTS**

        1.     Plaintiff Julie Ann Happel was born in Boston, Massachusetts on May 25, 1966. Plaintiff Julie A. Happel's Answers to Defendant's First Set of Interrogatories ("Resp. to Interrog.") No. 1 (Affidavit of Lauren E. Dwyer ("Dwyer Aff."), Ex. 1).

2.      Plaintiff's mother, Nora Ann Fahy ("Mrs. Fahy") lived in Jamaica Plain, Massachusetts during the pregnancy and treated with Dr. William J. Mulligan in Boston, Massachusetts.  Resp. to Interrog. Nos. 4, 6 (Dwyer Aff., Ex. 1).

3.      Plaintiff commenced this suit on August 7, 2003.  Complaint (Dwyer Aff., Ex. 2).

4.      Plaintiff alleges physical injuries of a T-shaped uterus, secondary infertility, and multiple failed treatments by intrauterine insemination and in vitro fertilization caused by her *in utero* exposure to DES.  Resp. to Interrog. No. 13(a) and (b)(Dwyer Aff., Ex. 1).

5.      Plaintiff Julie Ann Happel said she learned that she was exposed *in utero* to DES in 1996.  Transcript of Deposition of Julie A. Happel ("Happel Tr.") at 15 (Dwyer Aff., Ex. 3).

6.      In May 1997, Plaintiff's doctor, Martin Crane, M.D., performed an HSG of Plaintiff's uterus and told her that she may have been exposed to DES.  Happel Tr. at 15-16 (Dwyer Aff., Ex. 3); Medical Record of Julie Happel ("Med. Rec.") by Dr. Crane dated May 9, 1997 (Dwyer Aff., Ex. 4); Transcript of Deposition of Dr. Martin Crane ("Crane Tr") at 18-19. (Dwyer Aff., Ex. 5).

7.      Plaintiff had been trying to get pregnant for two years when she treated with Dr. Crane in 1997.  Happel Tr. at 37 (Dwyer Aff., Ex. 3); Crane Tr. at 6 (Dwyer Aff., Ex. 4).

8.      On June 18, 1997, Dr. Crane noted in Plaintiff's medical record that a hysterosalpingogram of Plaintiff's uterus "showed T-shaped uterus."  Med. Rec. by Dr. Crane dated June 18, 1997 (Dwyer Aff., Ex. 6).  Dr. Crane testified that he believed the configuration of Plaintiff's uterus was consistent with DES exposure.  Crane Tr. at 8-11 (Dwyer Aff., Ex. 5).

9.      Dr. Crane testified that pursuant to his usual habit of discussing the results of a hysterosalpingogram with his patient immediately, it is "quite likely" that he told Plaintiff that her compromised uterus might be due to DES and that her uterine abnormality was a significant

impediment to overcome if she were going to have children.  Crane Tr. 10-13 (Dwyer Aff., Ex. 4).

10.      While treating with Dr. Crane from 1997 to 1998, Plaintiff underwent several unsuccessful intrauterine inseminations ("IUIs").  Happel Tr. at 38 (Dwyer Aff., Ex. 3).  Dr. Crane testified that, consistent with his practice, in all likelihood he would have discussed with Plaintiff DES as a factor influencing her failed IUI procedures.  Crane Tr. at 21 (Dwyer Aff., Ex. 5).

11.      Plaintiff admits that she spoke to Dr. Crane in 1996 about the risk of DES exposure and cancer.  Happel Tr. 41-42 (Dwyer Aff., Ex. 3);  Resp. to Interrog. No. 10(b) (Dwyer Aff., Ex. 1).

12.      Plaintiff began treating with Dr. Elena Yanushpolsky in June of 1998 at the South Shore Hospital.  Med. Rec. by Dr. Elena Yanushpolsky Dated June 12, 1998 (Dwyer Aff., Ex. 7).  Dr. Yanushpolsky provided infertility services out of Brigham and Women's Hospital and the South Shore Hospital along with Dr. Janis Fox and Dr. Elizabeth Ginsburg.  Transcript of Deposition of Dr. Janis Fox ("Fox Tr.") at 8 (Dwyer Aff., Ex. 8).

13.      While treating with Dr. Yanushpolsky in 1998 and 1999, Plaintiff went though six or seven months of unsuccessful IUIs.  Happel Tr. at 47 (Dwyer Aff., Ex. 3).  Subsequently, in 1999 and 2000, Plaintiff underwent several in vitro fertilization treatments, but did not achieve pregnancy.  Happel Tr. 49, 50, 52, 55, 58 (Dwyer Aff., Ex. 3).

14.      On November 22, 1999, Dr. Janis Fox, a colleague of Dr. Yanushpolsky,  noted in Plaintiff's medical records that she and Plaintiff "had a long discussion about the implications of her DES exposure," including the risks of multiple pregnancies in the setting of a "DES uterus."

Med. Rec. by Dr. Janis Fox dated November 22, 1999 (Dwyer Aff., Ex. 9); Fox Tr. at 25 (Dwyer Aff., Ex. 8).

16. Plaintiff admits that she and Dr. Fox discussed the risk of multiple pregnancies in a DES exposed uterus.  Happel Tr. at 53-55 (Dwyer Aff., Ex. 3).

16. Dr. Fox testified that based on her notation in Plaintiff's medical records, she presumes that she would have told Mrs. Happel what a DES uterus was and the risks DES exposure posed for fertility.  Fox. Tr. 29-30; 34 (Dwyer Aff., Ex. 8).

17. In January 2000, Dr. Yanushpolsky sent Plaintiff a letter describing the status of her fertility treatments.  Letter from Dr. Yanushpolsky to Julie Happel Dated January 5, 2000 ("Yanushpolsky Letter")(Dwyer Aff., Ex. 10).  In this letter, Dr. Yanushpolsky stated: "We remain optimistic regarding your success in the future.  However, we have to consider the fact that your history of DES exposure may be contributing to our difficulty in achieving success." *Id.*

18. Plaintiff admits she received this letter and that it stated that her history of DES exposure might be contributing to her difficulty in achieving pregnancy.  Happel Tr. 56 (Dwyer Aff., Ex. 3).

19. Plaintiff experienced one pregnancy in August 2000 that resulted in a missed abortion.  Resp. to Interrog. No. 15 (Dwyer Aff., Ex. 1).

20. After being told by Dr. Crane in 1996 that she had been exposed to DES, Plaintiff said that she did not research DES or ask Dr. Crane any questions about DES.  Happel Tr. 17 (Dwyer Aff., Ex. 3).  After receiving the letter from Dr. Yanushpolsky in January 2000, Plaintiff said that she did not do any research regarding DES.  *Id.* at 57.  Plaintiff Julie Happel said that

she did no research on DES until she received information from her counsel in this lawsuit.  *Id.* at 78.

21.  Plaintiff was generally aware of product liability lawsuits -- that an individual could sue a manufacturer if he or she was injured by their product.  Happel Tr. at 76 (Dwyer Aff., Ex. 3).

22.  Numerous lawsuits against DES manufacturers were filed in the 1970s, 1980s, 1990s, and 2000s concerning injuries allegedly caused by *in utero* exposure to DES.  The news media nationally and in the Boston area have publicized these lawsuits and the injuries allegedly caused by DES exposure.  *See, e.g.*, Indices of Popular Literature (Dwyer Aff., Ex. 11); Westlaw search of Massachusetts media sources concerning diethylstilbestrol (Dwyer Aff., Ex. 12).  As example only, the Boston Herald newspaper ran a story in 1996 that discussed the impact of diethylstilbestrol exposure on fertility.  Beverly Beckham, *Op-Ed, Still Learning From DES Flaws*, BOSTON HERALD, Jan. 17, 1996 (Dwyer Aff., Ex. 13).

23.  Information about DES and DES litigation was also widely available on the Internet through common search engines such as Yahoo! and Google.  Yahoo! and Google search concerning diethylstilbestrol (Dwyer Aff., Ex. 14).

24.  DES Action, a support group for women exposed to DES, had information available on the Internet as early as 1996.  List of archived Internet pages (Dwyer Aff., Ex. 15).  This site asserted that infertility, pregnancy problems, and structural changes in reproductive organs were more frequent in "DES daughters" than in the population at large and reported on DES litigation.  *Id.*  DES Action's website can be accessed by entering "DES" into the Yahoo! search engine.  Yahoo! search concerning "DES" (Dwyer Aff., Ex. 16).

25.    Numerous medical publications also noted the connection between DES exposure and reproductive tract abnormalities.  *See*, PubMed search results (Dwyer Aff., Ex. 17).

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Carroll v. Xerox Corp.*, 294 F.3d 231, 236-37 (1st Cir. 2002).  Once a defendant demonstrates the insufficiency of the evidence supporting plaintiff's case, plaintiff must present facts showing a genuine issue for trial.  *See Carroll,* 294 F.3d at 236.

### II.    PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

#### A.    Plaintiff's Claims Are Barred By The District Of Columbia Statute Of Limitations.

This action was filed in the District of Columbia and then transferred to this Court.  If the District of Columbia statute of limitations applies, Plaintiff's claims are barred.  In the District of Columbia, product liability claims are governed by a three-year statute of limitations.  D.C. Code § 12-301(8) (2001); *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998).  Accordingly, if Plaintiff's cause of action arose any time prior to August 7, 2000, her claims are time-barred under the District's statute.

In product liability cases, the District of Columbia applies a three pronged "discovery rule."  Under this rule, a plaintiff's claims accrue when the plaintiff "know[s], *or by the exercise of reasonable diligence should know* (1) of the injury, (2) its cause in fact, and (3) of some

evidence of wrongdoing." *Bussineau v. President & Dir. of Georgetown Coll.*, 518 A.2d 423, 435 (D.C. 1986) (emphasis added).

Plaintiff knew of Prongs 1 and 2 well before August 7, 2000. When Plaintiff first started treating with Dr. Crane in 1997, she had been attempting pregnancy without success for two years. *See* Happel Tr. at 37 (Dwyer Aff., Ex. 3). Dr. Crane noted in Plaintiff's medical record that Mrs. Happel's hysteroscopy suggested a T-shaped uterus. *See* Med. Rec. by Dr. Crane dated June 18, 1997 (Dwyer Aff., Ex. 6). Dr. Crane testified that, in accordance with his usual practice, he likely discussed with Plaintiff the implications of her DES exposure on her uterus and its negative impact on her ability to have children. *See* Crane Tr. at 8-13, 21 (Dwyer Aff., Ex. 5).

In November 1999, Plaintiff was given further information about her injury and its cause. Dr. Fox presumed, based on her medical record explicitly noting a discussion with Plaintiff on risks associated with multiple pregnancies in a DES exposed uterus, that she discussed with Mrs. Happel the implications of DES exposure on a uterus and fertility. *See* Fox. Tr. 29-30; 34 (Dwyer Aff., Ex. 8); Med. Rec. by Dr. Fox dated November 22, 1999 (Dwyer Aff., Ex. 11). Plaintiff acknowledges that she discussed the risks of multiple pregnancies in a DES uterus with Dr. Fox. *See* Happel Tr. at 53-55 (Dwyer Aff., Ex. 3).

From 1997 through 2000, Plaintiff suffered multiple failed treatments of intrauterine insemination and in vitro fertilization. *See* Happel Tr. at 38, 47 (Dwyer Aff., Ex. 3). Dr. Crane testified that he likely discussed DES as a factor in Plaintiff's failed IUIs in 1997 and 1998. *See* Crane Tr. at 21 (Dwyer Aff., Ex. 5). In January 2000, Plaintiff was informed in a letter from Dr. Yanushpolsky that her "history of DES exposure may be contributing to our difficulty in achieving success" in attempting pregnancy. *See* Yanushpolsky Letter (Dwyer Aff., Ex. 10).

Plaintiff acknowledged receipt of the January 2000 letter and stated that she read the letters that she received from the reproductive center, where Dr. Yanushpolsky worked, when she received them. *See* Happel Tr. at 56 (Dwyer Aff., Ex. 3). This history clearly illustrates that Plaintiff should have been aware of her injuries and their now alleged causal connection with DES by January 2000.

Plaintiff also should have known, through reasonable diligence, of the existence of allegations of wrongdoing against manufacturers of DES. Under District of Columbia law, "a cause of action accrues for purposes of the statute of limitations when the plaintiff has either actual notice of her cause of action *or is deemed to be on inquiry notice because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice*." *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) (emphasis added). The discovery rule therefore does not require actual knowledge of causation and wrongdoing; constructive knowledge is sufficient. *See Bussineau*, 518 A.2d at 435. "Indeed, a right of action may accrue before the plaintiff becomes aware of all of the relevant facts." *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 661 (D.C. 1997).

### 1.     The District of Columbia Courts Hold Plaintiffs Accountable for Their Lack of Due Diligence.

The issue is not what Plaintiff knew, but what in the exercise of reasonable diligence she should have or could have known. From at least the time of the January 5, 2000 letter from Dr. Yanushpolsky, Plaintiff is charged with the knowledge of the cause of her injuries and the duty to investigate whether they were the result of some wrongdoing. *See Diamond*, 680 A.2d at 381 ("[i]n every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable diligence under all of the circumstances").

What constitutes due diligence must be viewed through an objective lens. *See Mattola v. Georgetown Univ. Hosp.*, 1992 WL 13198 *4 (D.D.C. January 22, 1992). "The discovery rule does not . . . give the plaintiff *carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm." *Hendel*, 705 A.2d at 661. Notice of any appreciable and actual harm flowing from the defendant's conduct is sufficient to start the limitations clock. *Hendel*, 705 A.2d at 661. A plaintiff must diligently investigate both the cause of her injury and any potential wrongdoing. *See Diamond*, 680 A.2d at 372, 381 (requiring diligence in investigating the facts of a potential claim).

It is well-established that the District of Columbia statute of limitations bars actions where the plaintiff did not act diligently after discovering at least some evidence of wrongdoing. *See Nelson v. American Nat'l Red Cross*, 815 F. Supp. 501, 503 (D.D.C. 1993), *aff'd in part, rev'd in part*, 26 F.3d 193 (D.C. Cir. 1994) (granting summary judgment against victim of HIV-tainted transfusion on statute of limitations grounds, despite the fact that Plaintiff was never expressly told of wrongdoing); *Mattola v. Georgetown University Hospital*, Civ. A. No. 902151, 1992 WL 13198, at *4-5 (granting summary judgment on statute of limitations grounds because plaintiff was charged as a matter of law with knowledge of the wrongdoing evident in her medical records, even if she had not read them). Notice of wrongdoing and failure to act with due diligence has led a wide array of tort claims to be barred under the D.C. statute of limitations. *See, e.g., Stewart v. O'Malley*, No. Civ. A. 97-CV-184RM, 1998 WL 29499 (D.D.C. Jan. 21, 1998) (legal malpractice); *Reese v. Geneva Enters., Inc.*, No. Civ. A. 96-1575 (LFO), 1997 WL 214864 (D.D.C. Apr. 18, 1997) (emotional distress and fraudulent misrepresentation); *Burda v. National Ass'n of Postal Supervisors*, 592 F. Supp. 273 (D.D.C. 1984); *Cevenini v.*

*Archbishop of Washington*, 707 A.2d 768 (D.C. 1998) (negligent hiring, fraud, emotional

distress); *Allen v. Hill*, 626 A.2d 875 (D.C. 1993) (medical malpractice).

The Seventh Circuit recently affirmed the grant of summary judgment to Lilly in a

similar DES case applying District of Columbia law. In *Albers v. Eli Lilly and Co.,* 354 F.3d

644, 645 (7th Cir. 2004) (per curium), the Court canvassed the law just described and ruled that

the absence of actual knowledge of tortious conduct by Lilly did not prolong the accrual period

because the plaintiff, by objective standards, was on notice to investigate her claim. The court

held that "a reasonable person would have commenced an inquiry [after learning of her injury

and its cause] and swiftly would have found some evidence of wrongdoing. *Id.* The district

court had noted that a reasonable inquiry would have disclosed the existence of literally

thousands of DES claims and other facts that gave indications of tortious conduct. *See Albers v.

Eli Lilly and Co.*, 257 F.Supp.2d 1147, 1151 (N.D. Ill. 2003). Those facts available on even

modest inquiry are attributable to Plaintiff at the latest in January 2000 and, in *Albers*, required

entry of judgment for defendant. Indeed, the district court noted that, were a jury to conclude

otherwise, the court would be obliged under Rule 50 to overturn that finding. *See id.* The

standards under Rule 50 and Rule 56 are identical. *See Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).

Most recently, one District of Columbia District Court followed *Bussineau*, *Diamond*,

and *Albers* and granted summary judgment to defendant Lilly, finding that plaintiff's cause of

action was time barred. *Roberge v. Eli Lilly and Co.*, Civ. A. No. 03-01008, p.16 (D. D.C.

March 11, 2005) (Dwyer Aff., Ex. 19) (holding that plaintiff had duty to investigate possibility

of wrongdoing where she knew of her injury and had been informed by her doctors that DES was

one of several possible causes). In finding that plaintiff was on inquiry notice of some evidence

- 10 -

of wrongdoing by the defendant, the Court relied upon *Albers* for the proposition that "a plaintiff has an objective duty of care to investigate and find some evidence of wrongdoing." *Id.* at 15. The plaintiff is placed on inquiry notice of wrongdoing if a reasonable investigation would have revealed such information. *Id.* In *Roberge*, as in this case, plaintiff's failed pregnancy attempts in combination with statements by her physicians that her DES exposure could be one of the factors contributing to her problems, created a duty of inquiry. *Id.* at 16.

If a plaintiff delays investigation of wrongdoing because, for example, she was actively misled about the source of wrongdoing, the date of accrual may be a disputed issue of fact that precludes summary judgment. *See Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939 (D.C. App. 2003); *Reeves v. Eli Lilly and Co.*, 03-00237 (D. D.C. 2005) (Dwyer Aff., Ex. 18). However, such a situation is "rare." *Reeves v. Eli Lilly*, Slip Op. at 17. In *Reeves*, a case that denied summary judgment for a defendant in a DES case, the plaintiff asserted she was misled by her doctors, who believed that her infertility was caused by endometriosis and not by DES. *Id.* at 25. However, there are no such active, misleading statements in the instant action.[1]

When "the quality of a plaintiff's diligence is dismissed as just another issue of fact to be put to the trial jury, as some courts have done, the discovery rule has effectively retired the statute." *Nelson*, 815 F. Supp. at 504.

### 2. Had Plaintiff Made a Reasonable and Diligent Investigation, She Would Have Known of Her Ability to Sue Prior to August 7, 2000.

As a matter of law, Plaintiff has failed the due diligence test. Plaintiff did not do any research about the possibility of bringing a lawsuit based upon alleged wrongdoing by the

---

[1] One trial court misinterpreted the *Medlantic Health Care Group, Inc.* decision as a bar to summary judgment unless all facts—including actual knowledge of tortious conduct—were stipulated. *See Epstein v. Eli Lilly and Co.*, No. 02-CA-236, Slip Op. at 5 (D.C. Super. Ct. Mar. 3, 2003) (Dwyer Aff., Ex. 20). That ruling is not an accurate statement of District of Columbia law and, in any event, does not control this Court's determination of Lilly's Motion for Summary Judgment on the claims of Plaintiff Julie Happel.

manufacturer of the DES she was allegedly exposed to, even after discussions with her physicians regarding DES as a causal factor of her infertility.  Happel Tr. at 17, 57, 78 (Dwyer Aff., Ex. 3).

Plaintiff learned she had been exposed to DES in 1996.  Numerous lawsuits against DES manufacturers were filed in the 1970s, 1980s, 1990s and 2000s concerning injuries allegedly caused by *in* utero exposure to DES.  The news media nationally and in the Boston area have publicized these lawsuits and the injuries allegedly caused by DES exposure.  *See, e.g.,* Indices of Popular Literature (Dwyer Aff., Ex. 11); Westlaw search of Massachusetts media sources concerning diethylstilbestrol (Dwyer Aff., Ex. 12); Beverly Beckham, *Op-Ed, Still Learning From DES Flaws*, Boston Herald, Jan. 17. 1996 (Dwyer Aff., Ex. 13).  The Internet is replete with information about DES claims and lawsuits, and has been since at least 1996.  DES Action, a support group for women exposed to DES, had information available on the Internet as early as 1996.  *See* Internet Archive search (Dwyer Aff. Ex. 15).  This site can be reached by simply entering "DES" into the Yahoo! search engine.  *See* Yahoo! search results (Dwyer Aff., Ex. 16). Publicly-accessible databases of medical journals, such as the PubMed database, illustrate continuing discussion of the effects of DES on infertility.  *See* PubMed search results (Dwyer Aff., Ex. 17).  Simple searches on popular Internet search engines such as Yahoo! and Google reveal a wealth of information about DES.  *See* Yahoo! and Google search results  (Dwyer Aff., Ex. 14).

Since the 1970s, plaintiffs have filed suits against DES manufacturers alleging injuries similar to Plaintiffs.  The first DES lawsuit, a multiple plaintiff case, was filed on September 17, 1974.  *See Abel v. Eli Lilly & Co.*, 289 N.W.2d 20, 22 (Mich. Ct. App. 1979).  In Massachusetts, where Plaintiff has lived her entire life, a putative class action was filed in 1976. *Payton v.*

*Abbott Labs.*, 437 N.E.2d 171, 173 (Mass. 1982). Through the years, there have been countless other DES cases throughout the country.[2] The news media nationally and in the Boston area have publicized these lawsuits and the injuries allegedly caused by DES exposure. *See* Facts at ¶¶ 23-26.

Here, Mrs. Happel's medical records clearly show that Dr. Yanushpolsky conveyed in writing to Mrs. Happel, as of January 2000, that her infertility was related to her DES exposure. Dr. Crane, who treated Mrs. Anderson in the 1997 and 1998, and Dr. Fox, who treated Plaintiff in 1999, also believed that her fertility problems were caused by DES and testified to the likelihood that they conveyed these views to Plaintiff. Because the Plaintiff's constructive knowledge is assessed under an objective "reasonable person" standard, summary judgment on statute of limitations grounds is appropriate.

### B.    Plaintiff's Claims Are Also Barred by the Massachusetts Statute of Limitations

#### 1.    Massachusetts' Statute of Limitations Governs Plaintiff's Claims

---

[2]      The following is a partial listing of just reported decisions – many of them involving claims for infertility or reproductive anomalies – generated as a result of DES litigation. *See, e.g.*: *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426 (6th Cir. 1997) (Ohio); *Wood v. Eli Lilly & Co.*, 38 F.3d 510 (10th Cir. 1994) (Okla.); *Castrignano v. E.R. Squibb & Sons, Inc.*, 900 F.2d 455 (1st Cir. 1990) (R.I.); *Krist v. Eli Lilly & Co.*, 897 F.2d 293 (7th Cir. 1990) (Wis.); *Hofherr v. Dart Indus., Inc.*, 853 F.2d 259 (4th Cir. 1988) (Md.); *Glater v. Eli Lilly & Co.*, 744 F.2d 213 (1st Cir. 1984) (N.H.); *McElhaney v. Eli Lilly & Co.*, 739 F.2d 340 (8th Cir. 1984) (S.D.); *Mathis v. Eli Lilly & Co.*, 719 F.2d 134 (6th Cir. 1983) (Tenn.); *Renfroe v. Eli Lilly & Co.*, 686 F.2d 642 (8th Cir. 1982) (Mo.); *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704 (3d Cir. 1981) (Pa.); *Narum v. Eli Lilly & Co.*, 914 F. Supp. 317 (D. Minn. 1996); *Holder v. Eli Lilly & Co.*, 708 F. Supp. 672 (E.D. Pa. 1989); *Lester v. Eli Lilly & Co.*, 698 F. Supp. 843 (D. Kan. 1988); *Brown v. Eli Lilly & Co.*, 690 F. Supp. 857 (D. Neb. 1988); *Webber v. Eli Lilly & Co.*, 117 F.R.D. 490 (D. Me. 1987); *Burel v. Berlex Labs., Inc.*, No. C84-1624A, 1986 WL 30018 (N.D. Ga. Oct. 8, 1986); *Schneider v. Eli Lilly & Co.*, 556 F. Supp. 809 (E.D. La. 1983); *Tidler v. Eli Lilly & Co.*, 95 F.R.D. 332 (D.D.C. 1982); *Ryan v. Eli Lilly & Co.*, 514 F. Supp. 1004, 1006 (D.S.C. 1981); *Gray v. United States*, 445 F. Supp. 337 (S.D. Tex. 1978); *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187 (Ohio 1998); *Conley v. Boyle Drug Co.*, 570 So. 2d 275 (Fla. 1990); *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324 (Ill. 1990); *Loerch v. Eli Lilly & Co.*, 445 N.W.2d 560 (Minn. 1989); *Mulcahy v. Eli Lilly & Co.*, 386 N.W.2d 67 (Iowa 1986); *Cavanaugh v. Abbott Labs.*, 496 A.2d 154 (Vt. 1985); *Collins v. Eli Lilly & Co.*, 342 N.W.2d 37 (Wisc. 1984); *Martin v. Abbott Labs.*, 689 P.2d 368 (Wash. 1984); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. 1984); *Bichler v. Eli Lilly & Co.*, 79 A.D.2d 317, 319 (N.Y. App. Div. 1st Dept. 1982); *Sindell v. Abbott Labs.*, 607 P.2d 924 (Cal. 1980); *Lyons v. Premo Pharmaceutical Labs, Inc.*, 406 A.2d 185, 188 (N.J. Super. Ct. App. Div. 1979).

Massachusetts substantive law applies to Plaintiffs' claims. This case was originally filed in the District of Columbia and was transferred to the District of Massachusetts under 28 U.S.C. § 1404(a), as Plaintiff currently resides in Massachusetts, Plaintiff was allegedly exposed *in utero* to DES in Massachusetts and almost all witnesses were within the subpoena power of the District of Massachusetts. When a case is transferred pursuant to 28 U.S.C. § 1404(a), the court is to apply the choice of law principles of the transferor court. *See Van Dusen v. Barrack,* 376 U.S. 612 (1964); *Brown v. Hearst Corp.*, 862 F. Supp. 622, 626 (D. Mass. 1994).

Under District of Columbia choice of law principles, this Court must perform a "governmental interests" analysis as to which substantive law to apply. *District of Columbia v. Coleman*, 667 A.2d 811, 816 (1995). In determining which jurisdiction's policy would be more advanced by the application of its law, the Court must consider the four factors listed in the Restatement (Second) of Conflict of Laws § 145: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered. *Id.* The District of Columbia actually applies a "constructive blending" of the governmental interests test and the most significant relationship test. *Id.* (citing *Hercules & Co. v. Shama Rest.*, 566 A.2d 31, 41 n.18 (D.C. 1989)).

Plaintiff's alleged exposure to DES took place in Massachusetts, the place where she was born, where her mother lived during her pregnancy, where her mother allegedly was prescribed DES and filled her prescription for DES, and where Plaintiff currently resides. *See* Interrogs. Nos. 1, 2, 4, 5, 6, 7 (Dwyer Aff., Ex. 1). The cause of action has no connection whatsoever to the District of Columbia. Because all of the operative events related to the prescription and use of diethylstilbestrol occurred in this Commonwealth, Massachusetts substantive law applies to

Plaintiff's claims.  *See Cosme v. Whitin Machine Works, Inc.*, 632 N.E.2d 832, 834-35 (Mass. 1994);  *see also Bushkin Associates, Inc., v. Raytheon Company*, 473 N.E.2d 662, 668-69 (Mass. 1985).

Prior to 1988, the District of Columbia and the Restatement of Laws both treated statutes of limitations as procedural matters governed by the law of the state in which the case was filed. *See May Dep't Stores Co., Inc. v. Devercelli*, 314 A.2d 767, 773 (D.C. 1973); *Kaplan v. Manhattan Life Ins. Co.*, 109 F.2d 463 (D.C. Cir. 1939); Restatement (Second), Conflict of Laws § 142 (1971).  The District of Columbia Court of Appeals explicitly noted that its approach was in line with the Restatement provision.  *See Hodge v. Southern Ry. Co.*, 415 A.2d 543, 544 (D.C. 1980).  In 1988, § 142 was revised.  The new provision stated that the forum state's statute of limitations should not be used when "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."  Restatement (Second), Conflict of Laws § 142 (1988 Revisions) (emphasis added).

The Restatement revision was part of an "emerging trend" in the case law to treat statutes of limitations similarly to other choice of law inquiries.  *Id.*, cmt. e (1988 Revisions); *Stanley v. CF-VH Assoc., Inc.,* 956 F.Supp. 55, 57-58 (D. Mass. 1997)(discussing the Massachusetts Supreme Judicial Court's adoption of the revised § 142 in *New England Telephone & Telegraph Co. v. Gourdeau Construction Co., Inc.*, 647 N.E.2d 42 (Mass. 1995)).  The comments to the revision explain that entertaining claims in a disinterested forum "simply because the claim is not barred by its own statute of limitations . . . would disserve the forum's general policy against the prosecution of stale claims and would not serve any other forum interest."  *Id.*, cmt. g (1988 Revisions).  Doing so also frustrates the policy of states whose statutes of limitations bar the

- 15 -

claim; imposes unjustified burdens on local courts; and encourages egregious forum shopping. *See id.;  see also, Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 779 (1984) (noting the tendency of plaintiffs to seek out favorable law when selecting a forum in which to bring suit); *Cowan v. Ford Motor Co*., 694 F.2d 104 (5th Cir. 1982).

Applying § 142,  as amended in 1988, to the facts of this case clearly shows that the Massachusetts statute of limitations ought to govern Plaintiff's claims.[3]  Maintenance of Plaintiff's claims will serve no substantial interest, if any, of the District of Columbia.  As the above analysis regarding the applicable substantive law demonstrates, Massachusetts has a far more significant relationship to the parties and the occurrence at issue than does the District of Columbia, and therefore its statute of limitations law should apply.

## 2.     Massachusetts' Three Year Statute of Limitations Bars Plaintiff's Claims

In Massachusetts, the statute of limitations for all of Plaintiff's claims is also three years from the date the cause of action accrues.  Mass. Gen. Laws ch. 106, § 2-318 (breach of warranty); Mass. Gen. Laws ch. 260, § 2A (negligence).  Once a defendant raises the issue of the statute of limitations, as here, the *plaintiff* bears the burden of proving she commenced the action within the applicable statutory period.  *Lindsay v. Romano*, 696 N.E.2d 520, 522 (Mass. 1998);

---

[3]  The District of Columbia Court of Appeals itself has yet to confront the issue of whether § 142, as amended, warrants a change in position respecting the applicability of the forum state's statute of limitations.  However, this court should consider the relevant precedent in light of the Court of Appeals' practice of relying on Restatement principles in formulating choice of law rules.  *See, e.g., District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995) (noting that it considers the four factors set forth in § 145 of the Restatement on Conflicts in resolving substantive choice of law issues); *Finance Am. Corp. v. Moyler*, 494 A.2d 926, 930 (D.C. 1985) (relying on various provisions of the Restatement on Conflicts to ascertain "general conflict of laws principles"); *Pearce v. E.F. Hutton, Inc.*, 664 F. Supp. 1490, 1495 (D.D.C. 1987) ("[I]t is the Restatement (Second) that guides choice of law decisions in the District of Columbia.").  Indeed, the District of Columbia Court of Appeals relied on the 1971 version of § 142 of the Restatement in support of its precedent of treating the statute of limitations as a procedural issue.  *See Hodge*, 415 A.2d at 544; *but see Reeves v. Eli Lilly & Co.*, Civ. A. No. 03-00237 (RCL)(D.D.C. March 11, 2005)(finding that District of Columbia choice of law rules treat statute of limitations as procedural rather than substantive)(Dwyer Aff., Ex. 18).

*Pike v. Proctor*, 22 N.E.2d 3, 4 (Mass. 1939) ("The burden is on the plaintiff to show that her

cause of action has not been barred [by the applicable statute of limitations].").

 The usual rule in tort cases is that the limitations period begins to run as soon as the

plaintiff is actually injured. *Gore v. Daniel O'Connell's Sons, Inc.*, 461 N.E.2d 256, 259 (Mass.

App. 1984). However, for injuries that are "inherently unknowable," courts apply the "discovery

rule" exception whereby the statute of limitations is triggered when the plaintiff (1) knows or

reasonably should have known that she has been injured, and (2) knows or reasonably should

have known of the cause of the injury. *See McGuinness v. Cotter*, 591 N.E.2d 659, 665 (Mass.

1992); *Bowen v. Eli Lilly & Co., Inc.*, 557 N.E.2d 739 (Mass. 1990) (granting summary

judgment to defendant in a DES case where plaintiff knew of her injury and was on notice of a

possible link between her injuries and her DES exposure). The plaintiff need not know with

certainty that the injury was caused by the defendant; knowledge that another party "may have

caused" the plaintiff's injuries, or of "a possible connection" between some other party and the

plaintiff's injury, suffices. *See McGuinness,* 591 N.E.2d at 665. Under this rule, reasonable

notice that a product or the act of another may have been a cause of harm to the plaintiff "creates

a duty of inquiry and starts the running of the statute of limitations." *Bowen*, 557 N.E.2d at 743;

*see also Sarocco v. Gen. Elec. Co.*, 939 F. Supp. 91, 96 (D. Mass. 1996) ("party cannot close its

eyes to easily discernible facts"). Once on notice, the plaintiff has the duty to discover from the

legal, scientific and medical communities whether he has a viable cause of action. *Fidler v.

Eastman Kodak Co.*, 714 F.2d 192, 199 (1st Cir. 1983); *Fidler v. E.M. Parker Co.*, 476 N.E.2d

595, 602 (Mass. 1985); *Martinez v. Sherwin-Williams*, 737 N.E.2d 927 (Mass. App. 2000)

(affirming summary judgment for defendants because plaintiff failed to investigate cause of

action).

As discussed above, Mrs. Happel was aware of the physical injuries she alleges well in advance of August 7, 2000. Dr. Crane testified to the likelihood that he discussed Plaintiff's DES exposed uterus -- her T-shaped uterus -- as a serious barrier to her becoming pregnant in 1997 and 1998. *See* Crane Tr. at 10-13 (Dwyer Aff., Ex. 3). In 1999, Dr. Fox likely conveyed similar information to Plaintiff. *See* Fox Tr. 53-54 (Dwyer Aff., Ex. 8). At the latest, in January 2000 Plaintiff was alerted to her injuries and their likely cause in writing by Dr. Yanushpolsky. *See* Yanushpolsky Letter (Dwyer Aff., Ex. 10).

This case is essentially identical to *Bowen v. Eli Lilly & Co., Inc.*, 557 N.E.2d 739 (Mass. 1990). In that case, the Massachusetts Supreme Judicial Court held that the plaintiff's DES claims were barred by the Massachusetts statute of limitations because she learned of her injuries and a possible causal link to DES exposure more than three years before she filed suit. Just like in this case, the plaintiff in *Bowen* received a letter from a doctor noting an association between her injuries and DES exposure. *Id.* at 742. The *Bowen* court noted that the statute of limitations was triggered as soon as plaintiff knows -- or as soon as a reasonable person on inquiry would have discovered -- the prospect of a significant causal connection. *See id* at 743.

The discovery rule in Massachusetts is judged by the reasonable person standard. *See id*. Here, the latest the statute of limitations began to run was January 5, 2000, when Dr. Yanushpolsky wrote Plaintiff a letter indicating that her DES exposure may be contributing to her difficulty in achieving pregnancy. *See* Yanushpolsky Letter (Dwyer Aff., Ex. 10). At that time, Plaintiff was aware of her injuries, aware of her DES exposure and aware that DES exposure could be impacting her fertility. Given these facts, Plaintiff had a duty to discover from any available source whether she had a viable cause of action. *See Fidler*; 714 F.2d at 199. Plaintiff's failure to make such an inquiry bars her claims now.

## CONCLUSION

Lilly is entitled to summary judgment because Plaintiff's claims are barred under the statutes of limitations of Massachusetts and the District of Columbia.

## REQUEST FOR HEARING

Lilly requests a hearing on its Motion for Summary Judgment.

Respectfully submitted,

ELI LILLY AND COMPANY


/s/ James J. Dillon
James J. Dillon, BBO # 124660
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

Attorney for Defendant
Eli Lilly and Company

Dated:  April 29, 2005